Day, J.
It is claimed that whatever remedy the plaintiff may have, arising from the negligence of the receivers or their employes, it can be obtained only by application to the court that has control of the receivers, and not by action against them.
In accordance with the practice of courts of equity, undoubtedly all proper protection may be extended to receivers by the court appointing them; but, as held in Parker v. Browning (8 Paige, 388), where a complaint is made against a receiver for an injury sustained by reason of negligence in the exercise of his official duties, the court may either itself take cognizance of the complaint, and administer justice between the parties, or may allow the party aggrieved to bring his action for the alleged injury.
The latter mode of obtaining redress is especially allowable and proper in this State; for, instead of the receiver being turned over to an action against him personally, our code of civil procedure confers on him, “under the control of the court, power to bring and defend actions in his own name, as receiver.” (Code, sec. 256.)
It appears in the case before ns, that the action was brought against the defendants in their capacity as receivers, by leave of the court, and that they entered their appearance pursuant to an order of the court and defended in their official capacity. This, in its practical effect, is but a statutory form of procuring redress substantially the same as that under the practice in courts of chancery, where it was ordinarily obtained by proceedings gyro interesse suo. There is, therefore, no available objection to the mode of procedure.
In this State, a receiver is appointed under the express authority of the statute, and among the powers thereby conferred upon him, as we have seen, is that of bringing and defending suits “in his own name, as receiver” Ilis capacity, *143 then, of suing and being sued “ as receiver,” is a power conferred upon him by the statute, and is plainly distinguishable from that of a personal character. Ilis status in this respect is like that of an administrator, and is analogous to that of a class of quasi corporations, which are authorized to conduct legal proceedings in the name of their officers, lie neither acquires thereby an individual benefit, nor is he subjected to a personal liability. Whatever he acquires by suit belongs to him officially, and satisfaction of judgments against him can be obtained only from the fund in his hands as receiver as directed by the court appointing him. Inasmuch, therefore, as the suit is brought against the defendants in their official capacity, it is not necessary to consider the extent of their personal liability, further than it may affect the question of their liability as receivers, in this action.
It is claimed that, notwithstanding the court, granted leave to bring the action against the recei vers, they are not thereby debarred from insisting upon any defence that would otherwise be available to them. It is therefore claimed that the action cannot be maintained, because the receivers are public officers, and are not answerable, in their official capacity, either for their own negligence or that of their employes.
A receiver, it is true, is an officer of the court appointing him ; but it does not follow that he is a public officer exempt, as such, from liabilities for injuries sustained by the negligent discharge of the duties imposed upon him.
If this were a suit to make the receiver personally answerable, the case would come more nearly within the reason of the rule insisted on; but there is little foundation for the claim where this cannot be done.
It has been much questioned, as to who are servants of ,the public, within the meaning of the rule, that public officers are not answerable for the negligence of their employes. We are referred to English cases applying this principle to commissioners appointed by the government to construct and have the custody and care of public works. Hall v. Smith, 2 Bing. 15G. “The members of these commissions were not generally, until recently, incorporated, and their services *144 were unattended by any compensation. To compel sueli officers to pay out of tlieir own private means the damages resulting from the negligence and omissions of duty of the numerous servants and agents in their employ, was felt to be a great hardship. And on grounds of public policy, the courts, considering them servants of the public, placed them under the protection of the rule, and exempted both their personal and their trust funds from liability.” S. & R. on Negligence, sec. 177.
“ But the questions involved in these cases have recently undergone a thorough examination in the House of Lords, and it is pointed out that the principle upon which most of the cases is based, ... is now quite inapplicable, inasmuch as it has been the practice of the legislature for many 3’ears past to exempt the private means of such commissioners from liability, either by incorporating them, or by enabling them to sue and be sued in the name of a clerk, and restricting the execution to the property which they hold as commissioners. The rule, therefore, as now fixed by the highest English authority, is that commissioners or trustees sued in their corporate character, and not affected personally by the result of the action, are liable in that character to one who suffers from the wrongful acts or omissions of their servants, agents, or employés. In other words, they are not, properly speaking, public officers, and the rule that holds public officers not answerable for the acts of inferior servants has no application to the case of trustees incorporated for the public benefit.” (S. & R. on Negligence, and cases cited in the note.)
In Ruck v. Williams (8 Hurls. & Nor. 308), which was a case against commissioners for damages sustained by reason of their own negligence in the discharge of their official duties, Pollock, O.B., said : “ I see nothing in the character of the commissioners as a public body, or in the fact that they are discharging a public duty without any remuneration, to exempt them from liability to compensate a person who has suffered by their carelessness or want of due regard in the performance of them duty. They are entitled to reim *145 burse themselves out of the funds over which they have control, and it would be hard indeed to throw on the plaintiff the loss which has been sustained, rather than let it be paid out of the common fund which the commissioners have at their disposal.”
Where a personal liability is not sought against receivers, they can occupy no more favorable position, as public officers, than that of commissioners, and, where the duties imposed upon them are like those in this case, they clearly come within the reason of the rule applied to commissioners in the English cases.
The liability of receivers (subject to the control of the court appointing them) has also been recognized in this country. In Blumenthal v. Brainard (38 Vermont, 402), it was held to be no defence to an action at law, for a breach of duty or obligation arising out of the business entrusted to them in that relation, that the defendants were running and managing a line of railroad as receivers under an appointment of a court of chancery. In Paige v. Smith (99 Mass. 395), it was held, that receivers running a railroad under apment of a court of chancery in another State, who act as common carriers and are there held liable as such to actions at law, may be sued as common carriers in Massachusetts.
It would seem, then, that the official character of the receivers, when sued by leave of the court, will not protect them from liability for injuries arising out of the prosecution of their business.
Nor do we think the receivers can be exempted from liability, as claimed in argument, on the gi’ound that they are agents or trustees; for, as to the public and their employés, they do not stand in either of these capacities. As to them the receivers had “no tangible principal behind them.” They were the governing power in operating the road by virtue of the authority conferred upon them as receivers. From the time of their appointment, they had supreme control in relation to the running of the cars on the road. They alone had authority to employ, direct, control, and dismiss the various agents employed by them to operate *146 the road. They hired Meara as a laborer to work for them in the discharge of their duties as receivers. He was their servant, and they Could direct his services or dismiss him at their pleasure. Neither the railroad company, nor any one else, after, the receivers took possession of the road, could employ, direct, control or dismiss any of the employes of the receivers. Since, then, their agents had no other principal, and their servants no other master, the receivers stood in these respective relations to them. The employés of the receivers were their servants in the same unqualified sense that they would have been the servants of the railroad company if it had continued to operate the road, and had employed them in the same business. The receivers cannot, then, be exempted from liability for injuries sustained by their employés or others from the negligent discharge of their duties, on the ground that they may be, in some sense, the agents or trustees of other parties not directly answerable for the injury.- Ballou v. Farnum, 9 Allen, 47; Fenton v. Dublin Steam Packet Co., 8 Ad. & El. 835; Quarman v. Burnett, 6 M. & W. 509; Dalzell v. Tyrer, 1 El. & Bl. 906.
The action was brought by the administrator of Martin Meara, under the statute, entitled “ An act requiring compensation for causing death by wrongful act, neglect, or default.” S. & C. 1139. It is the plain intent of the act to give the administrator of a deceased person, whose death has been “caused by wrongful act, neglect, or default,” a right of action on the same grounds that an action could have been maintained by the party injured if death had not ensued. The case, therefore, rests upon the same principles as though Meara, if death had not ensued, had brought an action against the same parties, and based on the same grounds.
In the original and first amended petition, the receivers are the only parties defendant. Other defendants are introduced in the second amended petition, but without materially affecting the question as to the liability of the receivers for the tort alleged against them.
Although the allegations in the petitions are not full and definite, in relation to the appointment of the receivers and *147 the extent of the duties imposed upon them under the order of the court, in the absence of any motion to make them more specific and definite, we think they may be regarded, in this respect, as sufficient in substance; for it is averred in each of the petitions, that it was filed against the defendants as receivers by leave of the court, and that as such receivers they were, at the time of the injury complained of, possessed of the use, occupancy, and control of the property of the railroad company, including the cars running on the road, alleged, in the original petition, to be under the exclusive control of the defendants; and in the second amended petition it is averred that the road was, at the time, under the order of the court, in the control and management of the defendants, Holbrook and Rosevelt, as the legally constituted receivers of the road.
The demurrers admit the truth of the allegations contained in the petitions. It is averred in each of them that Meara was employed by the receivers as a laborer on the railroad. It is, therefore, not questioned but that his position as such was subordinate to the managing agents and' superintendents of the receivers.
It is averred in each of the petitions that the death of Meara was caused while engaged in the business of the receivers, without any fault of his own. In the original petition it is alleged to have been caused by the negligence of the agents and superintendents of the receivers; and, in both the amended petitions, by the negligence of the receivers themselves.'
The questions are therefore presented, whether a receiver operating a railroad is answerable in his official capacity for an injury to his servant, sustained while in his employment, by reason of the negligence of the receiver, or the negligence of his agents in a position superior to that of the servant.
On the strength of the authorities already cited, as well as the reason and justice of the case, we think the question of his liability, in an action against him as receiver, should be determined by the same rules and principles that aie appli *148 cable to persons or cox-porations engaged in the business of operating a railroad.
In Sprague v. Smith (29 Vermont, 421), which was a case against the trustees of the bondholders of a railroad, Bed-field, C.J., said: “ It is well settled in pi'actice, and by repeated decisions, that the lessees of railroads ai’e liable, to the same extent as the lessor’s would have been, while they continue to operate the road. . . . And we can see no x-ea-son why the defendants are not liable to the same extent as the company would have been, and upon similar gx-ounds to those upon which lessees, or any others exercising the fx-anchiseof the company, for the time, must be; that is, they are the ostensible parties, who appear to the public to be exercising the franchise of the company. It would be pei’plexing in the exti-eme to require strangers, suffering injury through the negligence of operatives under the defendants’ control, to look beyond the party exercising such control. The party having this independent control is in genei’al liable for the acts of those under such control, whether of contract or tox’t.” The same principle, we have seen in Blumenthal v. Brainard, was, in the same State, applied to the receivers of a railroad, in a suit brought against them pei’sonally.
Where an action can be brought against a receiver in his official character, as in this State, there is no reason why he should not be held amenable, in that capacity, to the same rule. Indeed the reasons for holding him answerable in his official capacity are stxonger than those for holding him personally liable only. Fox-, where the receiver is not in default himself, there is a hardship in making him personally liable for the negligences of those he employs, not for his own benefit or profit, but for that of the fund he contx’ols; and, on the other hand, those having grievances growing out of his official business, may be often px-actically remediless, if they are left to the personal responsibility of the x’eceiver only, and are not permitted to pursue him in his official capacity, and obtain redress from the fund in his hands as receiver.
Nor would a recovery against him, and satisfaction out of the fund properly applicable to that pm-pose, woi’k a greater *149 hardship to the creditors and stockholders of the company, than that always sustained by them where the company itself is made liable for like grievances when it operates its own road. On the contraiy, if the receiver be not held officially chargeable, in many instances they might gain an advantage, by his operating the road, over what they would have if the company conducted its own business subject to its incidental losses.
Nor does it follow, if the receiver be held answerable as the company would have been if it had operated the road, that he would be relieved from accountability to his cestui que trusts for losses they might sustain through his personal misconduct or negligence.
In every view, therefore, it accords with sound principle and reason, that a receiver exercising the franchises of a railroad company, should be held amenable in his official capacity to the same rules of liability that are applicable to the company while it exercises the same powers of operating the road.
In determining the case before us, then, it only remains for us to apply the ordinary principles controlling cases of this class. Where a subordinate servant is injured, without his own fault, while engaged in the business of his employment, by reason of the negligence of his master or his agents, the master is liable to him in damages. Fifield v. Northern R. R. Co., 42 N. H. 225; Brydon v. Stewart, 2 Macq. H. L. 30; Railroad v. Keary, 3 Ohio St. 201.
Meara was the servant of the receivers, and was injured, according to the cases made in the several petitions demurred' to, either through the negligence of the receivers, or that of their agents in á position superior to that of Meara. The receivers are, therefore, liable.
It follows that the court of common pleas erred in sustaining the demurrers of the receivers to each of the petitions, and that the judgment in their favor must, therefore, be reversed.
As to the demurrer of the railroad company to the second amended petition, to which it was made party, it is sufficient *150 to say, that the remedy afforded by the statute on which the action is founded, is limited to two years, which period had elapsed when that petition was filed and the company thereby first sued; an action for damages against the company was then barred. Regarded as a petition for equitable relief, no judgment having been obtained in favor of the plaintiff, the averments are not sufficient to make a proper case to hold the company to answer. This demurrer, must, therefore, be sustained, and the judgment in favor of the company be affirmed.
Brinkerhoff, C.J., and Scott and White, JJ., concurred.
Welch, J., dissented.